**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BWX TECHNOLOGIES, INC.,** | ) | |
| **Plaintiff,** | ) | **Case No. 04-0096C** |
| **v.** | ) | **(Judge Lettow)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**<u>JOINT PRELIMINARY STATUS REPORT</u>**

Pursuant to this Court's order dated April 8, 2004, and the Rules of the United States Court of Federal Claims ("RCFC"), Appendix A, the parties respectfully file their Joint Preliminary Status Report. Where necessary, the parties set forth separate views upon points on which they do not agree. In addition, the parties set forth below their views regarding a stay of this action and discovery matters.

This action is based upon a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Contract" or "Standard Contract") between BWX Technologies, Inc. ("BWXT") and the United States, acting through the Department of Energy ("DOE"), the material terms of which are published at 10 C.F.R. § 961.11. Sixty-three cases involving the Government's actions in connection with spent nuclear fuel and/or high level waste are pending in the Court of Federal Claims. These cases are occasionally referred to by the Court and the parties as spent nuclear fuel ("SNF") cases.

**Views Regarding Stay and Discovery:**

In response to this Court's order for a pre-discovery conference in new SNF cases dated April 12, 2004, defendant filed a report demonstrating why a stay in the proceedings in this case, and others, would promote judicial efficiency. There are a number of legal issues that could be either resolved or narrowed during the upcoming trials in other SNF cases and appellate review of the Indiana Michigan case decided on May 21, 2004. Both parties strongly agree that a stay in the proceedings until March 1, 2005, serves the interests of the parties, and those of the Court. During the status conference before Judge Sypolt on April 30, 2004, defendant presented its views on the stay in the proceedings, and in other related matters. Assuming that this Court decides that this case should proceed, the parties feel that coordinated discovery would be the most efficient manner to proceed, and the Government believes that, to the extent that any additional discovery by the plaintiff (beyond that already taken in other SNF cases) is necessary, coordinated discovery among all SNF plaintiffs is essential to a just resolution of these cases. Following are summaries of the parties' positions regarding stays and discovery in this case.

<u>BWXT's View</u>:

BWXT joins the Government in its request to stay these proceedings until March 1, 2005. The issues requiring resolution in this case are being addressed in the "lead" cases cited by Defendant. Requiring the parties to proceed at this juncture will cause BWXT to incur substantial outside counsel fees that would otherwise be avoided (if the parties were permitted the option of applying precedent from the "lead" cases). In essence, BWXT believes that an amicable settlement can be reached (without resort to outside counsel) once the "lead" cases are decided.

The Government's View:

As previously explained in the Government's motion to stay, a stay of proceedings is necessary in this and the other newly filed cases to allow for the resolution of legal and factual issues that are common to the cases. These issues include the minimum mandatory schedule for the acceptance of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") by which the Government was contractually obligated to accept contract holders' SNF and/or HLW; the Government's obligation to accept Greater-Than-Class-C radioactive waste; and the ability of contract holders to recover damages incurred prior to the actual partial breach of the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," 10 C.F.R. § 961.11, or to recover damages, under a partial breach of contract theory, that contract holders allege might be incurred sometime in the future. These issues have been or will be squarely presented in the trials that are currently scheduled to occur between now and January 2005. Most of these issues are also presented in Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639 (2004), a case decide on May 21, 2004, that we expect will soon be before the appellate court. Resolution of these issues in these lead cases will streamline the Court's consideration of the remainder of these cases.

A decision not to stay the newly filed cases will vitiate the "lead" cases process that the Court instituted in response to the Government's previous motion to consolidate the SNF cases. Specifically, the Chief Judge of this Court selected six cases that it identified as "lead" or "accelerated" cases for the purpose of resolving the legal and factual issues that the Government had presented in various partially-dispositive motions filed in all of the cases existing at that time. One of those cases has already completed a trial regarding the plaintiff's damages and has

been decided, Indiana Michigan Power Co. v. United States, No. 98-486C (Fed. Cl.), three others are scheduled for trial beginning July 12, 2004, Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.), & Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.); and another "lead" case is scheduled for trial beginning late November 2004, Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.).[1] Given the significance of the issues in these cases, we anticipate that the United States Court of Appeals for the Federal Circuit will review the decisions in those cases and that the Federal Circuit's rulings will provide dispositive guidance regarding the threshold issues in all of the SNF cases pending before this Court.

The Government requests that the stay be entered until March 1, 2005. By this date, all of the currently scheduled trials will be concluded and decisions may be issued in at least some of the cases. At that time, the Court should convene a status conference to determine what further discovery, if any, will be allowed against the Government in a coordinated proceeding and establish an order in which the cases will proceed to trial.

To the extent that the Court does not stay the case, the Government requests that the Court direct that any discovery sought by BWXT be conducted on a coordinated basis with the other utility plaintiffs. Without coordination, which would limit the number of hours that any potential deponent would have to sit for deposition and the number of times that the deponent

[1]No further proceedings have been scheduled in Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl.), the sixth "lead" or "accelerated" case, pending this Court's resolution of pending motions in that case. However, the Court has scheduled trial in Sacramento Municipal Utility District v. United States, No. 98-488C (Fed. Cl.), to begin in late January 2005.

would have to appear, particular witnesses would likely be in repetitive and time-consuming depositions in numerous cases over a course of months or years. The coordinated proceedings would require also that the plaintiffs join together to formulate and serve written discovery requests upon the Government and that counsel for plaintiffs join together to take only one deposition of any Government witness. Absent coordination, the Government will be subject to duplicative written discovery requests and Government witnesses will have to sit for duplicative depositions in each of these new cases. Proceeding in such a manner will place burdens on the same individuals who are charged with developing and opening a repository so that DOE can meet its obligations pursuant to the Standard Contract at issue.

Further, in light of the extensive discovery that numerous plaintiffs have already obtained from the Government - including written discovery, the production of hundreds of thousands of pages of documents, and numerous extensive depositions - the Court, before BWXT or any other plaintiff is allowed to take additional discovery (including new depositions), should require BWXT and the other plaintiffs to identify, with specificity, the specific discovery that they need and the reasons that the discovery which has already occurred does not satisfy those requirements. To date, the Government has produced approximately 833,000 pages of documents in the coordinated discovery proceedings and in response to discovery requests served in the three Yankee cases, Indiana Michigan, and Commonwealth Edison.[2] Sixty-six depositions of 45 Government witnesses have been taken in the coordinated discovery and in

[2]The Government recently produced to the plaintiff in Sacramento Municipal Utility District v. United States, No. 98-488C (Braden, J.), copies of all documents produced to the Yankee plaintiffs, Commonwealth Edison, and Indiana Michigan since the close of coordinated discovery proceedings as part of its initial disclosures.

Yankee Atomic, Commonwealth Edison, and Indiana Michigan. In addition, the Government has provided access to a records database maintained by the Office of Civilian Radioactive Waste Management ("OCRWM"), the office charged with implementing the terms of the NWPA and the Standard Contracts. These documents and depositions have covered "schedule" issues as well as the Government's expected defenses to the plaintiffs' known damages claims and have been produced and conducted as recently as February and March of this year. The Government is prepared to provide these same documents, deposition transcripts, and access to counsel for BWXT and impose no conditions upon the use of this material outside the requirements and limitations imposed by the Court's rules and the rules of evidence, once the necessary protective orders have been entered. See section (l), below.

**(a) Does the court have jurisdiction over the action?**

BWXT asserts that this court has jurisdiction over the action, pursuant to 28 U.S.C. § 1491(a)(1). Defendant asserts that it has not identified any basis at this time upon which to question the Court's jurisdiction to entertain this action.

**(b) Should the case be consolidated with any other case and the reasons therefor?**

BWXT's View:

BWXT joins the Government in its request that the Court reassign all spent nuclear fuel cases to a single judge, followed by consolidation for the limited purpose of resolving issues surrounding the spent fuel acceptance schedule.

The Government's View:

Defendant has previously requested that the Court reassign all of the spent nuclear fuel cases to a single judge, followed by consolidation for the limited purpose of resolving issues

surrounding the spent nuclear fuel acceptance schedule terms of the Standard Contract. The Court has not granted the Government's request. Nevertheless, defendant continues to believe that reassignment and consolidation of the spent nuclear fuel cases, which would permit resolution of issues surrounding the schedule terms that appear in every Standard Contract, is appropriate.

**(c) Should trial of liability and damages be bifurcated and the reasons therefor?**

BWXT's View:

BWXT has no preference regarding bifurcation. Whether the Court decides to bifurcate or not, BWXT renews its request that the proceedings not begin until the lead cases are decided.

The Government's View:

Liability for partial breach of contract by the Government of its Standard Contract with BWXT has not been established. Liability for partial breach of contract cannot be established until the Court determines whether the fee terms of BWXT's contract, which provide that the parties will agree upon a fee at a later date, coupled with the acceptance schedule terms of the contract, render the contract wholly indefinite. Even if those terms do not render the contract wholly indefinite, the Court, before it can assess damages, must determine the minimum mandatory schedule for the acceptance of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") by which the Government was contractually obligated to accept contract holders' SNF and/or HLW. Defendant believes that the Court should resolve issues involving the acceptance schedule under which the Government is obligated, pursuant to the Standard Contract, to accept plaintiff's spent nuclear fuel (including the rate at which the Government is obligated, under the contract, to accept spent nuclear fuel from all of the contract holders). Once

the Court resolves those issues, any further trial proceedings regarding liability and damages should be resolved in a single proceeding, along with resolution of the amount of money that BWXT must pay the Department of Energy under Article XV(C) of its contract for disposal of its spent nuclear fuel.

**(d) Should further proceedings in this case be deferred pending consideration of another case before this court or any other tribunal and the reasons therefor?**

Both parties agree that the Court should issue a reasonable stay of the lawsuit, until March 1, 2005.

**(e) In cases other than tax refund actions, will a remand or suspension be sought and the reasons therefor and the proposed duration?**

Both parties state that they do not seek a remand of this case at this time, but that the Court should suspend the case for the reasons discussed in the prior section of this report.

**(f) Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect joinder and the schedule proposed to effect joinder?**

BWXT's View:

BWXT has not yet decided whether it will join additional parties.

The Government's View:

It is not clear at this time whether the Government will seek to add additional parties to this case. It is the Government's current understanding that BWXT presently possesses not only its own spent nuclear fuel ("SNF"), but also SNF owned by the Department of Energy and SNF owned by other commercial nuclear utilities. It is unclear at the present time whether BWXT is

seeking or will seek damages for the costs of storing spent nuclear fuel owned by either DOE (stored outside the context of the Standard Contract) or by commercial nuclear utilities. To the extent that BWXT's damages implicate SNF owned by other commercial nuclear utilities, those damages claims may overlap or conflict with the plaintiffs' damages claims in other SNF cases pending before this Court. At the present time, the Department of Justice does not know the identity of the commercial nuclear utility owners of SNF that BWXT currently possesses and, as a result, cannot identify which other cases pending before this Court may be affected by BWXT's case. When the Government learns more about BWXT's damages claim and the identities of the owners of the SNF in BWXT's possession, the Government will be in a better position to evaluate whether it is necessary to add additional parties to this case.

**(g) Does either party intend to file a motion pursuant to RCFC 12(b), 12(c) or 56 and, if so, a schedule for the intended filing?**

As noted above, both parties desire this case to be stayed, and therefore desire to defer setting a schedule for the filing of any motions pursuant to RCFC 12(b), 12(c) or 56. Similarly, both parties believe that the jointly-requested stay will help to inform their decisions regarding their intent to file such motions, and that it is premature at this time to commit to filing such motions.

**(h) What are the relevant factual and legal issues?**

<u>BWXT's View</u>:

The relevant legal and factual issues in this case include, but may not be limited to, the following:

1. Whether the Government is liable for a partial breach and, if so, the appropriate measure of BWXT's damages.

2. Whether the Government is liable for breach of its implied duty of good faith and fair dealing and, if so, the appropriate measure of BWXT's damages.

3. Whether the Government's actions amount to a "taking" requiring just compensation and, if so, the appropriate measure of BWXT's damages.

4. Whether the Government is obligated to accept greater than class C low level radioactive waste under the Standard Contract.

<u>The Government's View</u>:

The relevant legal and factual issues in this case include, but may not be limited to, the following:

1. Whether the fee provision at Article XV(C) of BWXT's contract, independently or coupled with the acceptance schedule provisions of BWXT's contract are sufficiently essential that they render the contract wholly indefinite.

2. If not, whether the Government is liable for a partial breach of plaintiff's Standard Contract;

3. The basis and scope of any liability for the partial breach of the Standard Contract;

4. The contractually required schedule for the Department of Energy's acceptance of spent nuclear fuel and/or high-level radioactive waste;

5. The appropriate measure of the plaintiff's damages, if any, arising from any partial breach of the Standard Contract;

6. Whether the Government breached its duty of good faith and fair dealing; and

7. Whether the Government is obligated to accept Greater-Than-Class-C low-level radioactive waste pursuant to the Standard Contract.

8. The amounts of money that BWXT owes the Department of Energy, pursuant to Article XV(C) of the contract, for the acceptance of BWXT's SNF.

**(i) What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

The parties have not foreclosed reasonable settlement of this lawsuit, and are committed to engaging in settlement discussions and negotiations at the appropriate time.

**(j) Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling and, if so, the reasons why the case is appropriate therefor? A request for expedited trial scheduling is generally appropriate when the parties anticipate that discovery, if any, can be completed within a 90-day period, the case may be tried within 3 days, no dispositive motion is anticipated, and a bench ruling is sought. The requested place of trial shall be stated. Before such a request is made, the parties shall confer specifically on this subject.**

The parties do not request expedited trial scheduling. Eventually, if the case is not resolved by settlement, the parties anticipate proceeding to trial.

**(k) Are there special issues regarding electronic case management needs?**

There are no special issues regarding electronic case management needs.

**(l) Is there other information of which the court should be aware at this time?**

The Government requests that the Court enter the same protective order in the new cases that Judge Sypolt previously entered in other cases on May 9, 2002, as well as the order

governing access to the RIS-web that Judge Sypolt entered on February 1, 2002. These orders must be entered prior to the production of documents and granting of access to DOE's records database previously provided to counsel in the other utility cases. In addition, the Government respectfully requests that the Court enter the e-mail preservation order that was entered in the prior SNF cases on November 8, 2001, to confirm the scope of and limitations upon the parties' obligations to preserve and search e-mail tapes. Absent this order, the Government may be subject to inconsistent and onerous requirements for the production of e-mail.

BWXT does not anticipate a problem, as a general matter, with the entry of such orders, but desires the opportunity to review them.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Steve Harvey
STEVE HARVEY
BWX TECHNOLOGIES, INC.
2016 Mount Athos Road
Lynchburg, VA 24504-5447
(434) 522-6690 - telephone
(434) 522-6950 - facsimile

Attorneys for Plaintiff
BWX Technologies, Inc.

June 21, 2004

s/ Victoria L. Strohmeyer
VICTORIA L. STROHMEYER
Trial Attorney
Commercial Litigation Branch,
Civil Division
1100 L Street, N.W.
Attn: Classification Unit 8th Floor
Washington, DC 20530
(202) 305-7573 - telephone
(202) 307-2503 - facsimile

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on this 21st day of June 2004, a copy of foregoing "JOINT PRELIMINARY STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Victoria L. Strohmeyer